IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BENJAMIN ALLEN BULLOCK, #A1079054,<br><br>      Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF HONOLULU, *et al.*,<br><br>      Defendants. | Civ. No. 23-00394 JMS-KJM<br><br>ORDER DISMISSING IN PART SECOND AMENDED PRISONER CIVIL RIGHTS COMPLAINT, ECF NO. 10, AND DIRECTING SERVICE |

## ORDER DISMISSING IN PART SECOND AMENDED PRISONER CIVIL RIGHTS COMPLAINT, ECF NO. 10, AND DIRECTING SERVICE

Before the court is pro se Plaintiff Benjamin Allen Bullock's ("Bullock") Second Amended Prisoner Civil Rights Complaint ("SAC") brought pursuant to 42 U.S.C. § 1983.[1]  In the SAC, Bullock alleges that Honolulu Police Department ("HPD") officers used excessive force during a March 3, 2023 arrest (Count I), retaliated against him (Count II), subjected him to unconstitutional conditions of confinement (Count III), deprived him of property without due process (Count IV), violated his equal protection rights (Count V), and denied him

---

[1]  As of January 8, 2024, an online inmate locator reflected that Bullock is incarcerated at the Oahu Community Correctional Center.  *See* VINELink, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A1079054"; and select "Search") (last visited Jan. 8, 2024); *see also* ECF No. 10 at PageID.79.

adequate medical care (Count VI).[2]  After conducting the required screening

pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the court concludes that

Bullock's excessive force claims in Count I against Officers Adiniwin, Baba, and

Duvall in their individual capacities require a response.  Bullock's remaining

claims are DISMISSED.

## I. <u>STATUTORY SCREENING</u>

The court is required to screen all in forma pauperis prisoner

complaints filed against government officials, pursuant to 28 U.S.C. §§ 1915(e)(2)

and 1915A(a).  *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).

Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or

seek damages from defendants who are immune from suit must be dismissed.  *See*

*Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v.*

*Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the

same standard of review as that used under Federal Rule of Civil Procedure

12(b)(6).  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per

curiam).  Under this standard, a complaint must "contain sufficient factual matter,

---

[2]  Bullock names as Defendants the City and County of Honolulu ("City and County"), Jonathan Daniel Baba, Richard Adiniwin, Jonathan Torres, Seth Duvall, Richard Townsend, and Ming Wang.  *See* ECF No. 10 at PageID.79–PageID.83.  The individual defendants are named in both their individual and official capacities.  *Id.*

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

In conducting this screening, the court liberally construes pro se litigants' pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.  When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  <u>BACKGROUND</u>[3]

On March 3, 2023, Bullock was arrested for sleeping at an Ala Moana bus stop.  ECF No. 10 at PageID.86.  During the arrest, Adiniwin elbowed Bullock in the nose and "whack[ed]" Bullock's arm.  *Id.*  Adiniwin also broke Bullock's cell phone by throwing it on the ground.  *Id.* at PageID.89.  Baba and Duvall pinned Bullock against a wall, body-slammed him, and dragged him by his arms.

---

[3] Bullock's factual allegations are accepted as true for purposes of screening.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

*Id.* at PageID.86.  According to Bullock, all of this happened even though he was not endangering himself or others, nor did he attempt to evade arrest.  *Id.*

During the preceding two months, Bullock had been arrested three additional times.  *Id.* at PageID.87.  After learning of these prior arrests, the officers "retaliated" against Bullock by arresting him on March 3, 2023.  *Id.*  At some point, Townsend and Wang "approved" two reports submitted by Duvall and Baba relating to the March 3, 2023 arrest.  *Id.* at PageID.86; *see also id.* at PageID.87.

While being transported to the police station, Torres left Bullock handcuffed in a hot, stalled car with the windows up.  *Id.* at PageID.86 Torres laughed at, mocked, and teased Bullock.  *Id.*

Once at the police station, unnamed HPD officers stripped Bullock naked, did not provide him with a hot meal, and left him in a "freezing" air-conditioned cell, without a bed or blanket, for an entire weekend.  *Id.* at PageID.88. The window to Bullock's cell was "blocked," and an industrial fan blew cold air under his cell door on the fan's highest setting.  *Id.*  When Bullock complained, he was told that the fan "couldn't be moved per the 'higher ups.'"  *Id.*

Bullock alleges that Torres, Townsend, and Wang did not ensure that he received his prescribed medications.  *Id.* at PageID.91.  Bullock further alleges

that he should have been provided pain medication for injuries sustained during his arrest. *Id.*

According to Bullock, the HPD officers discriminated against him because he is disabled, LGBT, and African American. *Id.* at PageID.90.

Bullock commenced this suit by signing the original Complaint on September 12, 2023. ECF No. 1 at PageID.11. The court granted Bullock's Application to Proceed In Forma Pauperis by a Prisoner, ECF No. 2, on September 25, 2023, ECF No. 4. On October 10, 2023, the court dismissed the original Complaint with partial leave granted to amend. ECF No. 5.

The court received the FAC on November 7, 2023. ECF No. 6. On November 27, 2023, the court dismissed the FAC with leave granted to amend. ECF No. 7.

The court received the SAC on December 15, 2023. ECF No. 10. In the SAC, Bullock alleges that the HPD officers used excessive force during the March 3, 2023 arrest (Count I), retaliated against him (Count II), subjected him to unconstitutional conditions of confinement (Count III), deprived him of property without due process (Count IV), violated his equal protection rights (Count V), and denied him adequate medical care (Count VI). *Id.* at PageID.86–PageID.91. Bullock seeks $1,000,000 in damages. *Id.* at PageID.92.

### III. <u>DISCUSSION</u>

**A.      Legal Framework for Claims under 42 U.S.C. § 1983**

"Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution.'" *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting 42 U.S.C. § 1983) (alteration in original).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

**B.      HPD Officers in their Official Capacities**

Bullock names as defendants six HPD officers in both their individual and official capacities.  ECF No. 10 at PageID.80–PageID.83.

To the extent the officers are named in their official capacities, "[a]n official capacity suit against a municipal officer is equivalent to a suit against the entity."  *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (citation omitted).  "When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant."  *Id.* (citation omitted).

Because Bullock also names the City and County of Honolulu as a defendant, his claims against Baba, Adiniwin, Torres, Duvall, Townsend, and Wang in their official capacities are DISMISSED with prejudice. *See Flores v. City & County of Honolulu*, 2019 WL 5848058, at *2–3 (D. Haw. Nov. 7, 2019) (dismissing as "redundant" claim against officer in his official capacity where municipal defendant was also named).

## C.    City and County of Honolulu

Bullock also names as a defendant the City and County of Honolulu. ECF No. 10 at PageID.79.

Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a municipality can be "sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id*. at 690–91.  In addition, a municipality can be liable under Section 1983 for a "failure to train" when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  A municipality cannot be held liable under Section 1983 "solely

because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691 (italics omitted).

Thus, a plaintiff can allege municipal liability under Section 1983 in any of three ways. First, a municipality can be liable when it or a person with final policymaking authority within the municipality expressly enacts or authorizes a policy respecting a challenged action. *Id.* at 690; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."). In this regard, a municipality can also be liable when a final policymaker "ratifie[s]" a subordinate's conduct and the basis for it. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066–67 (9th Cir. 2013). Second, a municipality can be liable for a custom that, although not expressly enacted, is "so permanent and well settled" it operates with the force of law. *Monell*, 436 U.S. at 691 (internal quotation marks omitted). Third, a municipality can be liable for a failure to train its employees when such failure amounts to deliberate indifference towards the rights of its inhabitants. *City of Canton*, 489 U.S. at 388–89. In addition, a plaintiff must allege that a policy, custom, or failure to train actually caused a municipality's employee to commit the constitutional deprivation. *Id.* at 391; *Monell*, 436 U.S. at 694.

Here, Bullock has not plausibly alleged that a final policymaker expressly enacted or authorized a policy regarding any of the complained-of conduct.  To the extent Bullock alleges that it was "common practice" for HPD officers to punish pretrial detainees, ECF No. 10 at PageID.86, to retaliate against the disabled, LGBT people, and African Americans, *id.* at PageID.87, to deprive people of their property without due process, *id.* at PageID.89, to violate individuals' equal protection rights, *id.* at PageID.90, and to deny adequate medical care, *id.* at PageID.91, such conclusory allegations are not enough to state a claim. Other than describing his own experiences, Bullock alleges no facts describing any well-settled and permanent practices within the HPD.  *See Melton v. County of Maricopa*, 2022 WL 3031319, at *2 (9th Cir. Aug. 1, 2022) (concluding that pleading was "too conclusory and formulaic" because it included "no specific allegations concerning other instances of excessive force sufficient to allege a custom, policy, or practice"); *see also Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 884 (9th Cir. 2022) ("Plaintiffs cannot allege a widespread practice or custom based on isolated or sporadic incidents; [liability] must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.") (quotation marks and citations omitted) (alteration in original).

Likewise, Bullock's conclusory allegations that training of HPD's officers was inadequate, *see* ECF No. 10 at PageID.86–PageID.91, are insufficient to state a claim.  Bullock does not describe any of the HPD's training practices, say how they were deficient, or directly link the HPD's training to his experiences. *See Hyer v. City & County of Honolulu*, 2020 WL 3440934, at *8 (D. Haw. June 23, 2020) ("Allegations of inadequate training are insufficient where they do not identify what the training practices were, how the training practices were deficient, or how the training caused the specific Plaintiff's harm.").  Thus, Bullock's claims against the City and County are DISMISSED.

**D.      Fourth Amendment—Excessive Force**

Bullock alleges in Count I that HPD officers used excessive force during his March 3, 2023 arrest.  ECF No. 10 at PageID.86.

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989).  "In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct." *Id.* The Supreme Court has held that "all claims that law enforcement officers have

10

used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* at 395.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[R]easonableness is always the touchstone of Fourth Amendment analysis." *Birchfield v. North Dakota*, 579 U.S. 438, 477 (2016).

"The operative question in excessive force cases is whether the totality of the circumstances justifie[s] a particular sort of search or seizure." *County of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 427–28 (2017) (quotation marks and citation omitted) (brackets in original). "The reasonableness of the use of force is evaluated under an 'objective' inquiry that pays careful attention to the facts and circumstances of each particular case." *Id.* at 428 (quotation marks omitted). "Whether a use of force was reasonable will depend on the facts of the particular case, including, but not limited to, whether the suspect posed an immediate threat to anyone, whether the suspect resisted or attempted to evade arrest, and the severity of the crime at issue." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019). In addition, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene,

11

rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "That

inquiry is dispositive: When an officer carries out a seizure that is reasonable,

taking into account all relevant circumstances, there is no valid excessive force

claim." *Mendez*, 581 U.S. at 428.

Here, Bullock alleges that he was arrested for sleeping at an Ala

Moana bus stop on March 3, 2023. ECF No. 10 at PageID.86. During the arrest,

Adiniwin elbowed Bullock in the nose and whacked Bullock's arm. *Id.* Baba and

Duvall pinned Bullock against a wall, body-slammed him, and dragged him by his

arms. *Id.* According to Bullock, he was not endangering himself or others, nor did

he attempt to evade arrest. *Id.* Based on these allegations, Bullock's excessive

force claims against Adiniwin, Baba, and Duvall may proceed.

Bullock further alleges that Torres left him handcuffed in a hot, stalled

police car, with the windows up. *Id.* Although "unnecessary exposure to heat may

cause a constitutional violation, being briefly confined in uncomfortable

conditions, such as a hot patrol car, does not amount to a constitutional violation."

*Morgan v. County of Hawaii*, 2016 WL 1254222, at *12 (D. Haw. Mar. 29, 2016)

(quotation marks and citations omitted). Thus, being detained in a patrol car for

more than four hours, with the windows rolled up, no air conditioning, and an

interior temperature of 115 degrees may be enough to proceed with an excessive

force claim. *See Kassab v. San Diego Police Dep't*, 453 F. App'x 747, 748 (9th

Cir. 2011).  "In contrast, federal district courts have found that force was not

excessive when the confinement lasted thirty minutes or less."  *Arias v. Amador*,

61 F. Supp. 3d 960, 976 (E.D. Cal. 2014).  Here, Bullock does not say how long he

was held in the car, nor does he say how hot it got in the car.  His excessive force

claim against Torres is therefore DISMISSED.

Finally, although Bullock refers to Townsend and Wang in Count I,

he does not allege that they participated in his arrest.  To the extent Bullock alleges

that Townsend and Wang approved reports written by Duvall and Baba, Bullock

does not describe what the reports said or how they related to the amount of force

used at the time of the arrest.  Thus, Bullock's excessive force claims against

Townsend and Wang are also DISMISSED.

## E.    First Amendment—Retaliation

Bullock alleges in Count II that Adiniwin, Torres, Baba, Duvall,

Townsend, and Wang violated his First Amendment rights by retaliating against

him.  ECF No. 10 at PageID.87.

"A plaintiff can bring a First Amendment claim against government

officials who retaliate for engaging in protected speech."  *Hill v. City of Fountain

Valley*, 70 F.4th 507, 518 (9th Cir. 2023) (citation omitted).  To recover under

42 U.S.C. § 1983 for such retaliation, a plaintiff must prove: (1) he engaged in

constitutionally protected activity; (2) as a result, he was subjected to adverse

action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (citation omitted). The Supreme Court has held that, in general, a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019). "Absent such a showing, a retaliatory arrest claim fails." *Id.* at 1725.

Here, Bullock has not plausibly alleged that he engaged in any constitutionally protected activity, that there was a substantial causal relationship between such activity and his arrest, and that there was no probable cause for his arrest. Indeed, Bullock has not plausibly linked his arrest to any protected activity. Thus, Bullock's retaliation claims in Count II are DISMISSED.

## F.   Fourteenth Amendment

### 1. *Conditions of Confinement*

Bullock alleges in Count III that he was stripped naked and kept for a weekend in a "freezing" air-conditioned cell with no bed or blanket, and with an industrial fan blowing under his cell door at its highest setting. ECF No. 10 at PageID.88. Bullock further alleges that he was not provided a hot meal during this period. *Id.*

14

Pretrial detainees' challenges to the conditions of their confinement are analyzed under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment.  *Norbert v. City & County of San Francisco*, 10 F.4th 918, 928 (9th Cir. 2021).  "[T]he Fourteenth Amendment is more protective than the Eighth Amendment because the Fourteenth Amendment prohibits *all* punishment of *pretrial detainees*."  *Id.* (quotation marks and citations omitted).  "For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee."  *Id.* (quotation marks and citation omitted).

Here, however, Bullock has not plausibly linked any named defendant to the conditions that he experienced.  *See Rowley v. Allison*, 2023 WL 7004931, at *1 (E.D. Cal. Oct. 24, 2023) ("There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.").  Although Bullock alleges that Townsend and Wang were "in charge" during "some of [his] stay" at HPD headquarters, this is not enough to state a claim.  Bullock does not allege that he ever complained to Townsend or Wang about the conditions he experienced, what he said in doing so, or how they responded.  *See id.* ("[V]ague and conclusory allegations of official participation in civil rights violations are not sufficient.").  Townsend and Wang's

15

supervisory positions, without more, are insufficient to state a claim against them. *See Jackson v. Dutra*, 2023 WL 2064543, at *2 (9th Cir. Feb. 17, 2023) ("Vicarious liability does not exist under § 1983, and a supervisor may be held liable for the actions of subordinates only where there exists a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.") (quotation marks and citation omitted).  Bullock's claims based on the conditions of his confinement are DISMISSED.

### 2.  *Deprivation of Property*

Bullock alleges in Count IV that Adiniwin broke his cell phone during the March 3, 2023 arrest by throwing it on the ground.  ECF No. 10 at PageID.89.

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.  Neither negligent nor "unauthorized intentional deprivation[s] of property by a state employee . . . constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  Hawaii law provides an adequate post-deprivation remedy for the loss of property.  *See* Haw. Rev. Stat. § 663-1; *Finefeuiaki v. Maui Police Dep't*, 2018 WL 4839001, at *6 (D. Haw. Oct. 4, 2018); *see also Lagmay v. Nobriga*, 2016 WL 4975198, at *6 (D. Haw. Sept. 16, 2016) ("Hawaii's civil tort

16

claim process provides an adequate post-deprivation remedy.").  Thus, Bullock's

Fourteenth Amendment claim in Count IV based on damage to his cell phone is

DISMISSED with prejudice.

### 3.  Equal Protection

Bullock alleges in Count V that Adiniwin, Torres, Baba, Duvall,

Townsend, and Wang discriminated against him "for being disabled, LGBT, [and]

African American."  ECF No. 10 at PageID.90.

The Fourteenth Amendment provides that "[n]o State shall . . . deny to

any person within its jurisdiction the equal protection of the laws."  U.S. Const.

amend. XIV, § 1.  "The Equal Protection Clause requires the State to treat all

similarly situated people equally."  *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th

Cir. 2013) (quotation marks and citation omitted).

In general, "[t]o state a claim under 42 U.S.C. § 1983 for a violation

of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show

that the defendants acted with an intent or purpose to discriminate against the

plaintiff based upon membership in a protected class."  *Id.* (quotation marks and

citation omitted).

Here, Bullock has not plausibly alleged that any defendant acted with

an intent or purpose to discriminate against him based on his membership in a

protected class.  Although Bullock complains about the amount of force used

during his arrest and his lack of access to certain medication, he alleges no facts

showing that he was treated differently because of his membership in a protected

class. "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, . . . do not suffice." *O. L. v. Jara*, 2022 WL 1499656, at *2

(9th Cir. May 12, 2022), *cert. denied*, 143 S. Ct. 227 (2022) (quotation marks

omitted); *see also Andrews v. Torres*, 594 F. App'x 450, 451 (9th Cir. 2015) ("The

district court properly dismissed the equal protection . . . claims on the separate

ground[] that [the plaintiff] presented only conclusory allegations of intentional

discrimination."). Bullock's equal protection claims in Count V are DISMISSED.

### 4.  *Medical Care*

Bullock alleges in Count VI that he was denied psychiatric, blood-

pressure, anti-viral, and pain medications. ECF No. 10 at PageID.91.

Medical care claims brought by pretrial detainees arise under the

Fourteenth Amendment's Due Process Clause. *Gordon v. County of Orange*,

888 F.3d 1118, 1124 (9th Cir. 2018). "[C]laims for violations of the right to

adequate medical care brought by pretrial detainees against individual defendants

under the Fourteenth Amendment must be evaluated under an objective deliberate

indifference standard." *Id.* at 1124–25 (quotation marks omitted).

The elements of a pretrial detainee's medical care claim are: (1) the

defendant made an intentional decision with respect to the conditions under which

the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Id.* at 1125.

Regarding the third element, "the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case." *Id.* (quotation marks and citation omitted) (alteration in original).  The "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment"; the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (internal quotation marks and citation omitted).

Here, Bullock has not plausibly alleged that any named defendant made an intentional decision regarding his access to medication.  Bullock does not allege that he spoke with any defendant about his medication, what he said in doing so, or how that person responded.  Although Bullock alleges that "all should have been well aware of [his] medical health" because he had described himself as "mental health," Bullock does not allege any facts suggesting that any defendant

19

knew of his medication needs. *See Azdar v. Wreston*, 2019 WL 4511495, at *2 (E.D. Cal. Sept. 19, 2019) ("[T]here are no facts alleged by which the Court can reasonably infer that [defendants] objectively knew of Plaintiff's medical needs and made an intentional decision with respect to Plaintiff's medical care."), *report and recommendation adopted*, 2019 WL 5307065 (E.D. Cal. Oct. 21, 2019). Bullock's claims in Count VI based on his medical care are therefore DISMISSED.

## IV.  <u>CONCLUSION</u>

(1) Bullock's excessive force claims in Count I against Officers Adiniwin, Baba, and Duvall shall be served as directed below.  Adiniwin, Baba, and Duvall are required to file a response after service is effected.

(2) Bullock's remaining claims are DISMISSED for the reasons set forth above.  For claims not dismissed with prejudice, this dismissal does not foreclose Bullock from later filing an amended pleading, subject to the requirements of Federal Rule of Civil Procedure 15 and any applicable orders of this court.

## V.  <u>SERVICE ORDER</u>

(1) For Officers Adiniwin, Baba, and Duvall each, the Clerk is directed to send Bullock: one copy of the SAC, ECF No. 10; one completed summons; one Form USM-285; one Notice of Lawsuit and Request for Waiver of Service of Summons forms (AO 398); and two Waiver of Service of Summons

forms (AO 399).  The Clerk is further directed to send Bullock one instruction sheet and one additional copy of the SAC (four total).

(2) Bullock shall complete these forms for Officers Adiniwin, Baba, and Duvall, addressed to the Honolulu Police Department at 801 South Beretania Street, Honolulu, HI 96813, and return the forms to the U.S. Marshal at P.O. Box 50184, Honolulu, HI 96850.

(3) Upon receipt of the above-completed forms from Bullock, the U.S. Marshal shall mail to Officers Adiniwin, Baba, and Duvall each: a copy of the SAC, ECF No. 10; a completed Notice of Lawsuit and Request for Waiver of Service form (AO 398); and two completed Waiver of Service of Summons forms (AO 399), without payment of costs.  *See* Fed. R. Civ. P. 4(c)(3).  The U.S. Marshal shall retain a completed summons for each Defendant and a copy of the SAC, ECF No. 10.

(4) Officers Adiniwin, Baba, and Duvall are directed to return the Waiver of Service forms to the U.S. Marshal, who will file the waiver(s) with the court.  If any Defendant does not return a Waiver of Service of Summons form within 60 days from the date that the forms are mailed, the U.S. Marshal shall personally serve that Defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).  Within ten days after personal service is effected, the U.S. Marshal shall file the return of service for that Defendant, along

21

with evidence of any attempts to secure a waiver of service of summons and of the costs subsequently incurred in effecting service.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the U.S. Marshal's office in photocopying additional copies of the summons, the SAC, and for preparing new USM-285 forms, if required.  Costs of service will be taxed against a personally served Defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2).

(5) Alternatively, if Bullock does not wish to use the services of the U.S. Marshal in effecting service of the Summons and SAC, as outlined above, he may serve Defendants on his own according to the procedures set forth in Fed. R. Civ. P. 4.  Bullock is cautioned that if he fails to comply with this Order and his non-compliance prevents timely and proper service as set forth in Federal Rule of Civil Procedure 4(m), this action is subject to dismissal for failure to serve.

(6) Once served, Officers Adiniwin, Baba, and Duvall shall file a responsive pleading to the SAC, ECF No. 10, within the time set forth in Federal Rule of Civil Procedure 12.

(7) After the SAC, ECF No. 10, is served and Officers Adiniwin, Baba, and Duvall have filed an answer or responsive pleading, Plaintiff's documents will be deemed served when they are electronically filed by the court.

The U.S. Marshal is not responsible for serving these documents on Plaintiff's behalf.

(8) Bullock shall immediately notify the court of any change of address. The notice shall contain only information about the change of address and its effective date and shall not include requests for other relief. Failure to timely file such notice may result in the dismissal of the action for failure to prosecute under Fed. R. Civ. P. 41(b).

(9) The Clerk shall also send a copy of this Order to the U.S. Marshal at P.O. Box 50184, Honolulu, HI 96850.

(10) Until the SAC, ECF No. 10, is served and Officers Adiniwin, Baba, and Duvall or their attorney(s) file a notice of appearance, Plaintiff SHALL NOT FILE MOTIONS OR OTHER DOCUMENTS with the court.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 12, 2024.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Bullock v. City and County of Honolulu, et al.*, Civ. No. 23-00394 JMS-KJM, Order Dismissing in Part Second Amended Prisoner Civil Rights Complaint, ECF No. 10, and Directing Service